LARRY JAMES WRIGHT *v.* STATE OF ARKANSAS

5299                                       419 S. W. 2d 320

Opinion delivered October 16, 1967
[Rehearing denied November 6, 1967.]

*J. Sam Wood* and *Martin Green,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

PAUL WARD, Justice. Larry Wright, appellant was charged with the crime of committing rape on the night of January 24, 1967. He was tried and convicted on May 9, 1967, and sentenced to life imprisonment.

The victim identified appellant as the person who entered her bedroom about midnight and forced her to have intercourse with him. Appellant's defense consisted mainly of an alibi. He took the witness stand, and testified, in substance: He was at the home of his parents from about 10 p.m. on the night in question and remained there constantly until 7 or 8 o'clock the next morning. He was corroborated by his parents, and, to some degree, by other witnesses.

On appeal, and for a reversal, appellant does not contend there was any lack of sufficient evidence to support the jury verdict of guilty. He does, however, contend the case should be reversed because of two alleged errors committed by the trial court, which alleged errors we presently examine.

*One.* The first contention by appellant is:

"The trial court erred in failing to grant a mistrial after allowing the prosecution to improperly cross-examine the defendant by accusing defendant of specific acts of bad conduct and criminal conduct and attempting to impeach defendant's credibility."

Another point raised by appellant is closely related to the above and will not be discussed separately. It merely

concludes that "the verdict of the jury was rendered out of bias and prejudice against the defendant as a result of the improper cross-examination . . ." mentioned above.

On cross-examination appellant was asked nine questions by the prosecuting attorney relative to his alleged past conduct or behavior. The first question was:

Q. "I will ask you if Mr. Roger Tucker on several occasions has requested that you quit hanging around his place of business because you make indecent proposals to women."

Appellant objected on the ground that "it has nothing to do with the proof of innocence in this case at all." Then the trial court stated:

". . . you know this defendant has taken the stand. He is subject to the same rule and cross-examination as any other witness. These questions may be asked on the credibility of the witness."

To the above appellant again objected, and saved exceptions.

Six or seven other questions of the same or similar import were propounded to appellant, all of which were denied by him. To one other question of this nature appellant answered that "I used to hang around the Palace Laundry and they told me, the lady did, to stay away and I ain't been back there since".

There were several discussions between the court and the attorneys relative to the propriety of the question during which time appellant made proper objections. Then the court made this statement to the jury:

"Gentlemen, you understand these questions and answers with respect to this line of questioning which has just been pursued, to which the defense

224

has objected, is not to be considered by you as sub-
stantive proof of the offense for which he is being
tried. It goes only to his credibility.''

A review of our decisions pertinent to matter here
in question leads us to conclude the trial court's ruling
was correct.

In support of his contention of error appellant cites
cases of *Ware* v. *State,* 91 Ark. 555, 121 S. W. 927;
*Younger* v. *State,* 100 Ark. 321, 140 S. W. 139, and;
*Henson* v. *State,* 239 Ark. 727, 393 S. W. 2d 856. We
think, however, these cases are not applicable to the sit-
uation here. In the *Ware* case the State offered testi-
mony by witness as to other crimes committed by ap-
pellant after he had tried to prove his good character.
In rejecting the State's testimony this Court also said:

"As a witness in the cause, he could have been cross-
examined; and upon his cross-examination, like any
other witness, he could have been asked as to specif-
ic acts for the purpose of discrediting his testimony
as a witness.''

In the *Younger* case (which was a rape case) the State
again offered to prove appellant's bad character by its
own witnesses, even though he had not attempted to
prove his good character. In holding this was improper,
we said:

"Appellant, however, having taken the witness
stand in his own behalf, was subject to all the rules
of examination and impeachment as any other wit-
ness. Therefore to test his credibility the State had
the right on cross-examination to ask the witness
if he had not been convicted of petit larceny, and
if he had not been confined in the penitentiary.''

The issue in the *Henson* case was very similar to that
in the *Ware* case, and we held that after appellant had
offered to prove his good character the State could not

introduce witnesses to prove "specific instances of bad behavior as a matter of contradicting appellant's testimony".

There are numerous decisions by this Court holding, in effect, that when a defendant takes the witness stand (as he did here) he is subject to the same rules of evidence and impeachment as other witnesses on cross-examination to test his credibility. *Jordan* v. *State,* 141 Ark. 504, 217 S. W. 788; *Kyles* v. *State,* 143 Ark. 419, 220 S. W. 458; *Hays* v. *State,* 219 Ark. 301, 241 S. W. 2d 266, and; *Edens* v. *State,* 235 Ark. 178, 359 S. W. 2d 432.

*Two.* It is here contended that the trial court committed reversible error in refusing to discharge the jury and empanel a new jury. The issue arose in the manner described below.

While the jurors were being questioned for qualification the trial court asked them if anyone knew anything about the facts of the case or if they had heard anything about it. Thereupon John Candler (a member of the panel) stated: "This incident occurred in rent property owned by myself and my wife." Appellant moved for a mistrial, and it was denied by the court. An objection was made by appellant, and exceptions saved.

A review of the record convinces us the court committed no reversible error. In response to further questioning by the court Candler made it clear that he had talked with no one who purported to know the facts; that, if accepted, he would not be influenced either way as to guilt or innocence of the defendant; that he didn't know appellant or the prosecuting witness, and had never seen either before the morning of the trial; that he only heard that an "alleged incident did happen"

Appellant also made a motion to strike Candler for cause, and this motion was granted.

We think the trial court, under the state of the record here, did not abuse his discretion in refusing to declare a mistrial. In the case of *Briley* v. *White,* 209 Ark. 941, 193 S. W. 2d 326, this Court refused to grant a mistrial. In sustaining the trial court we used this language:

"Much latitude must be given to the trial court in handling matters of this kind, and, in the absence of a showing of abuse of discretion or a manifest prejudice to the rights of the complaining party, this court will not reverse a judgment on account of the action of the trial court". (Citing numerous cases in support.)

Affirmed.