BILLY RAY HOBBS AND HAROLD ANDERSON *v.*
STATE OF ARKANSAS

5307                                      422 S. W. 2d 849

Opinion delivered January 15, 1968
[Rehearing denied February 12, 1968]

*Larry R. McCord,* for appellants.

*Joe Purcell,* Attorney General; *Don Langston,* Asst.
Atty. Gen., for appellee.

J. FRED JONES, Justice. Billy Ray Hobbs and Harold Anderson were charged on information filed by the prosecuting attorney and were found guilty by a jury in the Sebastian County Circuit Court of the crimes of kidnapping and assault with intent to rob one Claud Knight. They were sentenced to five years in the penitentiary on the assault charges and to fifteen years on the kidnapping charges and they have appealed relying on the following points for reversal:

"The trial court erred in refusing to grant the appellants' Petition for a severance.

"The trial court erred in denying the appellants' Motion for a new trial on the ground that the verdict and judgment were contrary to the law and evidence in this case.

"The trial court erred in overruling appellants' objections to cross-examination of appellant Billy Ray Hobbs as to alleged particular wrongful acts.

"The trial court abused its discretion in refusing to reopen the case on behalf of appellants after the jury had been instructed but before they had retired to commence their deliberations."

The facts, under the testimony produced by the state, are briefly these: About 8:00 p.m. on March 15, 1967, Claud Knight left the 400 Bar in Fort Smith where he had been drinking some beer. When he left the bar, he encountered the appellants just outside the bar and they followed him down the street. Knight became suspicious of the appellants and went into McCartney's Cafe to avoid them. The appellants also went into the cafe and when Knight left the cafe, appellants followed him and forced him into an automobile by brandishing a pistol and by pushing and shoving him into the automobile. Anderson drove the automobile across the Arkansas River bridge toward Oklahoma, while Hobbs sat

in the back seat with Knight. While the automobile was on the bridge, Knight was trying to get out of the automobile and Hobbs severely beat Knight knocking out one or two of his teeth. Appellants took Knight into a wooded area on the Oklahoma side of the Arkansas River, robbed him of his money, glasses, pocket knife and watch, and then drove off and left him. Knight made his way to a beer tavern on the highway where the constable of Sequoyah County was called and the constable drove Knight to the police station in Fort Smith. While Knight was being questioned at the police station, the appellants were brought to the station as suspects in connection with a filling station hold up and Knight readily recognized and identified them as the ones who had kidnapped, assaulted and robbed him.

The officers found Knight's glasses and driver's license in a station wagon described by Knight, and claimed by the father of appellant Anderson. They also found a pistol under the porch at Hobbs' home, and also found one of Hobbs' shirts bearing human blood stains in Hobbs' house where he lived with his mother.

Hobbs testified at the trial in his own defense. He admitted that he and Anderson took Knight into Oklahoma, but contended that it was at Knight's request. He testified that Knight and one Frank Gibson were in company with a woman by the name of Romana Gilliam; that Knight offered to purchase some beer for the appellants if they would drive Knight, Gibson and the Gilliam woman over into Oklahoma; that the beer tavern in Oklahoma was closed and that by prearrangement, the appellants drove onto a side road and walked away from the automobile leaving Knight and Gibson in the automobile with the Gilliam woman; that somehow Gibson obtained possession of Knight's billfold and that when Knight attempted to retrieve his billfold from Gibson, a fight ensued between Knight and Gibson; that Gibson knocked Knight down into the ditch, and that he and Anderson helped Knight to his feet but that when Knight started to get back into the automobile,

he was shoved back into the ditch and they drove back to Fort Smith leaving Knight in the ditch. Hobbs explained that the pistol found under his front porch belonged to Gibson and that he had been unable to locate Gibson or the Gilliam woman as witnesses.

As to the first point urged by the appellants, Ark. Stat. Ann. § 43-1802 (Repl. 1964) provides that when two or more defendants are jointly indicted "* * * for a felony less than capital, defendants may be tried jointly or separately, in the discretion of the trial court." The appellants have shown no abuse of discretion in the trial court's refusal to grant appellants' petition for severance in this case.

We find appellants' second point without merit. The jury evidently believed Knight's version of what took place on the night of March 15, and we hold that the evidence was amply sufficient to sustain the convictions.

As to the third point, the appellant, Hobbs, was asked on cross-examination if he and Anderson had not robbed Roy Williams at a filling station after they had robbed Knight. The defense counsel objected to the question and the court admonished the jury as follows:

"This witness is on cross-examination and while he is not on trial for any other robbery the prosecution has the right to ask him questions going to his credibility as a witness so you may better pass upon his credibility simply as a witness. Whether you believe him or disbelieve him on the story that he's told and the merits of the case for which he's being tried. Objections overruled.

* * *

"The jury will understand now that this witness is not on trial for robbery of these other acts that he is being questioned on. The court permitting these questions to be asked simply to go to his credibility as a witness."

With this admonition, the trial court did not err in over-ruling appellants' objections to this line of questioning on cross-examination. This same point was very recently before us on another appeal from the Sebastian County Circuit Court in the case of *Wright* v. *State,* 243 Ark. 221, 419 S. W. 2d 320, and in that case we said:

> "There are numerous decisions by this Court hold-ing, in effect, that when a defendant takes the wit-ness stand (as he did here) he is subject to the same rules of evidence and impeachment as other wit-nesses on cross-examination to test his credibility. *Jordan* v. *State,* 141 Ark. 504, 217 S. W. 788; *Kyles* v. *State,* 143 Ark. 419, 222 S. W. 458; *Hays* v. *State,* 219 Ark. 301, 241 S. W. 2d 266, and *Edens* v. *State,* 235 Ark. 178, 359 S. W. 2d 432."

We hold that the trial court did not err in overruling appellants' objections under point number three.

We find no merit in the fourth point relied on by appellants. After the case was fully tried and the State and appellants had rested, and after the jury had re-ceived its instructions, the court directed the jury to retire and consider its verdict. At this point appellants' counsel requested the court to reopen the case for the introduction of testimony of a witness, who apparently had just been procured by appellant Anderson's father and brought into the court room for the purpose of of-fering testimony to corroborate appellant Hobbs' testi-mony, that Knight, Gibson and the Gilliam woman got into the automobile with the appellants. The court re-fused to reopen the case for the introduction of this additional testimony. Appellants' counsel objected to the court's refusal and the objection was carried for-ward into appellants' motion for a new trial where it is asserted that the testimony the witness would have given constituted newly discovered evidence.

The reopening of a case for the taking of further testimony after the testimony on both sides has been

concluded and the cause has been submitted to the jury, is a matter within the sound discretion of the trial court, and this court will not reverse the ruling of the trial court unless it appears that the trial court, in making such ruling, has abused its discretion. *Whittaker* v. *State,* 173 Ark. 1172, 294 S. W. 397. We find no such abuse of discretion in the case at bar. Furthermore, the appellants did not exercise any degree of diligence at all in the production of the proffered evidence at the trial. No subpoena had been issued for the witness or served on him, and the record is silent as to how long the proposed witness had been in the court room. Appellants' own counsel had not even been advised of the name of the witness and had only been advised that appellant Anderson's father had walked ten miles to get the witness. Certainly a subpoena could have been obtained for this witness and the sheriff sent on his way to serve it in less time than it took appellant's father to walk ten miles, had appellants advised their counsel that the presence of the witness was desired. Before the defense rested, the witness could have been called to testify if in the court room, or a motion for recess or continuance made if he was not, had appellants and their counsel deemed the testimony of the witness important to their case.

Finding no error in the trial of these cases, the judgments of the trial court are affirmed.

Affirmed.